# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINCY L. JOHNSON,<br><br>    Plaintiff,<br><br>    vs.<br><br>JOHN E. POTTER, Postmaster General,<br><br>    Defendants.<br>_____/ | CASE NO. CV F 09-0529 LJO DLB<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION**<br>(Doc. 16) |

By notice filed on May 4, 2011, defendant John E. Potter, Postmaster General, moves for summary judgment pursuant to Rule 56. Plaintiff Quincy L. Johnson ("Johnson"), in *propria persona*, filed an opposition on May 26, 2011. Defendant filed a reply brief on June 1, 2011. Pursuant to Local Rule 230(g), this matter was submitted on the pleadings without oral argument and the hearing was vacated. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

## **FACTUAL BACKGROUND**

Johnson was employed as a mail carrier at the Sunnyside Station of the Fresno, California Post Office for the United States Postal Service ("USPS"). Johnson is a black male who alleges that he was the victim of discrimination on the basis of physical and mental disability, and retaliation for prior EEO activity. He does not claim he was discriminated based upon his race.

Johnson claims discrimination because of an investigative interview, he was denied a special route count, and he was sent home early for one day on paid administrative leave for insubordination.

1

Johnson alleges that the USPS responses were in retaliation for protected activities and that these conditions constituted a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, the Fifth and Fourteenth Amendments to the Constitution, and the American's with Disabilities Act.

**A.     Attendance and Overtime Warnings**

Johnson was hired as a full-time mail carrier in 1992. In 1995, Johnson had EEO activity which resolved in 1998. Between 2000-2004, Johnson requested leave for health issues. On February 4, 2004, John contacted the EEOC about his then supervisor, Rosemary Massie ("Massie"), an African American woman. Johnson did not file a formal complaint. Between 2004 and 2007, Johnson did not have other EEO activity.

On April 18, 2006, Johnson received a letter of warning from Massie about irregular attendance. (Doc. 16-6, Undisputed Facts Fact 8.) The letter was later reduced to an "official discussion" and did not result in EEO activity.

In March of 2007, Johnson was assigned as a letter carrier to the Sunyside Station. Once assigned, he requested to be considered for overtime, by placing his name on the Overtime Desired List. On July 10 and July 11, 2007, the Station Manager at Sunnyside, Kevin Woodard ("Woodard"), an African American woman, conducted an office meeting known as a Station Stand-Up, and stated her expectation, consistent with USPS policy, that all carriers would "make their office time" without incurring overtime. (Doc. 21, Johnson Response Facts no. 9.) Johnson was present for the meeting and he recognized that Woodard's expectations applied to all Carriers regardless of race, disability, age, or gender. (Doc. 21, Johnson Response Facts no. 17.) After the Station Stand-Up, Massie issued three letters of warning to carriers who violated the USPS policy on overtime. One such letter was to Johnson for using .68 hours of unauthorized overtime on July 30, 2007. Johnson understood that he was expected to deliver the mail without incurring overtime. (Doc. 21, Johnson Response Facts no. 17.) On July 31, 2007, plaintiff received a Letter of Warning for failing to complete his route in the allocated time on July 30, 2007.

Massie met with Johnson on July 31, 2007 about the over time, but he got angry and left the meeting. Johnson contends Massie gave him permission to incur overtime. On August 1, 2007 Massie

2

1 volunteered to help Johnson measure his work load by riding with him on his route, and after a "ride
2 along," Massie determined that Johnson's route had not significantly increased. She suggested that he
3 could formally make a Request for Special Route Count.
4       After additional overtime incurred, Massie gave Johnson a letter of warning dated August 9, 2007
5 for unsatisfactory performance and unauthorized overtime from July 30. Massie agreed to expunge the
6 letter of warning from Johnson's record if his performance improved, and it was expunged six months
7 later. (Doc. 21, Johnson Response Facts no. 21.)

**B.  Request for Special Route Count**

9       On August 31, 2007, Johnson submitted a Request for Special Route Count to measure his
10 workload. He also submitted a request to add 31 addresses to his Route Listing Report, also known as
11 the "red book." Massie denied that Johnson's Request for Special Route Count on September 4, 2007.
12 On September 6, 2007, Johnson's "red book" ultimately was approved. (Doc. 21, Johnson Response
13 Facts no. 40.)
14       On September 13, 2007, Johnson asked Massie if he could delay delivery of advertising mail.
15 Massie denied the request and told Johnson she did not want to discuss it further. Johnson continued
16 to argue with Massie and he admits he confronted Massie about the route count while in the presence
17 of other employees. (Doc. 21, Johnson Response Facts no. 48.) Massie sent Johnson home for
18 insubordination and gave him paid administrative leave.
19       On October 28, 2007, Johnson filed a formal complaint with the EEOC regarding the letter of
20 warning dated August 9, denial of his request for a special route count on September 4, and for being
21 sent home on September 13, 2007.

**C.  USPS' Contentions**

23       USPS argues the Court lacks subject matter jurisdiction over Johnson's constitutional claims
24 and disability claims because Title VII is the exclusive remedy. USPS notes that "race" is not an
25 issue in this case. Johnson disclaimed any issues regarding race discrimination (both of Johnson's
26 supervisors are of the same race as Johnson). (Doc. 1, Complaint at 9:10-11 ("...racial-discrimination
27 is not an issue")); (Doc. 17-3, Johnson Depo at 271:2-272:3 ("I'm not alleging race.")). The only
28 claims raised in this case are based upon retaliation for prior EEO activity in 1995 and 2004 and

1 hostile work environment.  USPS argues that Johnson also admits that he did not have a disability at
2 the relevant time in 2007.  (Doc. 17-2, Johnson Depo. at 94:20-95:8, Ex. 7), and (Doc. 17-2, Johnson
3 Depo. 105:22-25; Admissions No. 6, 13, and 14.)  His request for a route count was not denied
4 because of disability. Id. 338:3-5. Thus, he has failed to state a claim under the Rehabilitation Act.

Johnson also cannot establish a *prima facie* case of retaliation for his EEO claims because there was no final adverse action and no causal link between protected activity and any employment actions.  USPS argues that the hostile work environment claim fails because the alleged conduct was not severe or pervasive and his prior EEO activity took place more than 3 years earlier. (Doc. 16-1, Moving papers p. 1.)

**D.      Johnson's Contentions**

Plaintiff claims he had restrictions in 2001 after shoulder surgery which had him 15% permanently disabled of the upper extremities.  (Doc. 20, Opposition p.1.)  Plaintiff notes that he is an 18-year employee with an unblemished record except for two letters of warnings written by Massie.  The first was in 2006 by Massie after he filed an EEO claim against her and the second was in 2007.  (Doc. 20 Opposition p.1-2.)  Johnson argues that the .68 overtime, for which he received a Letter of Warning, had been approved by Massie and plaintiff argues that there many factors justifying the overtime.  (Doc. 20 Opposition p.3-4.)  Johnson argues that he was harassed at work by Massie, and points to Exh. M (Doc. 21, page 99 of 102, Exh M) for examples.  In Exh M, Johnson recounts a work incident in 2003 in which Massie "met with him" and verbally attacked him. Plaintiff alleges that Massed "used her position to intimidate plaintiff."  (Doc. 20 Opposition p. 5.) Plaintiff argues that "I feel that because, of me filing an EEO and suing the Post Office in the past for Racial Discrimination, Harassment, and Stress in 1998 [sic]. I am being retaliated against." (Doc. 20 Opposition p.11-12.)

## ANALYSIS AND DISCUSSION

**A.      Summary Judgment/Adjudication Standards**

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim."  On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of

contested matters. F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**B.  Due Process and Equal Protection**

USPS argues that Johnson's Due Process and Equal Protection claims, based on employment discrimination, cannot proceed because Title VII is the exclusive remedy.

Title VII provides the exclusive federal jurisdiction for claims of discrimination in federal employment. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 828-29, 96 S.Ct. 1961 (1976). "Any claims of retaliation are within the scope of Title VII. Section 2000e-3 provides in pertinent part:  (a) It shall be unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge under this subchapter." *White v. General Services Administration,* 652 F.2d 913, 917 (9th Cir. 1981) ("Title VII therefore provides a statutory remedy for retaliation against filing an EEO charge, and no independent *Bivens* -type action is available.")  Because the purpose of Title VII was to create "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination," plaintiff may not "bootstrap" additional causes of action onto his Title VII complaint. *Brown v. General Services Administration*, 425 U.S. at 829.

It is undisputed that all of Johnson's complaints arise from employment actions against him. Johnson's complaint is based upon alleged employment action taken against him by employees of the USPS, which he alleges were taken in retaliation for his participation in protected activity.  Title VII is the exclusive remedy available to him.  Accordingly, Johnson cannot bring independent constitutional claims for employment actions.

/////

1  **C.     American with Disabilities Act**

2       Johnson also alleges violations of the Americans with Disabilities Act ("ADA") by the
3  USPS.

4       USPS argues that plaintiff has disclaimed any issues regarding disability discrimination. (Doc.
5  16-1, Moving papers p.8.)  USPS argues that Johnson admits he did not have a disability during the
6  relevant period.  Johnson agrees that on "July 30, 2007, Johnson had no restrictions that affected his
7  ability to work an eight hour day."  (Doc. 21, Johnson Response Fact no. 25.)

8       The Americans with Disabilities Act ("ADA"; 42 U.S.C. §§ 12101–12213) was enacted in 1990
9  to protect employment opportunities for qualified individuals with disabilities. It prohibits discrimination
10 on the basis of disability by private employers (under Title I) and public entities (under Title II). The
11 ADA by its own definitions excludes the USPS from its coverage by expressly stating that the term
12 "employer" does not include the United States. 42 U.S.C. § 12111(5)(B).  Thus, the ADA does not apply
13 to the United States.  Accordingly, motion as to Johnson's claim for violation of the ADA will be
14 granted.

15      The Rehabilitation Act of 1973, 29 U.S.C. §§ 791 et seq., provides the exclusive means
16 of redressing claims of disability discrimination in federal employment. *See Boyd v. United*
17 *States Postal Serv.*, 752 F.2d 410, 412 (9th Cir. 1985) (Section 791 is the exclusive remedy for
18 handicap discrimination claims by federal employees). Congress enacted the Rehabilitation Act of 1973
19 (29 U.S.C. § 701 et seq.) to provide greater rights and opportunities to qualified individuals with
20 disabilities and to ensure that the federal government "plays a leadership role in promoting the
21 employment of individuals with disabilities." 29 U.S.C. § 701(b).  To state a *prima facie* case
22 under the Rehabilitation Act, a plaintiff must demonstrate that (1) he is a person with a
23 disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination
24 because of his disability. *See Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1058 (9th
25 Cir. 2005).

26      Here, while the complaint alleges a claim under the ADA, the Court will read the complaint
27 liberally as alleging a disability claim under the Rehabilitation Act.  Nonetheless, Johnson cannot show
28 disability.  Johnson has testified that he does not have a disability.  (Doc. 17-2, Johnson Depo. P.94-95

1  (no physical or mental restrictions); p. 105 (no physical or mental restrictions on July 30th 2007).) USPS
2  presents evidence that in deposition, Johnson admitted that he did not have a disability and his
3  impairments were temporary and did not qualify as disabilities. Indeed, it is undisputed that Johnson
4  did not have work restrictions that affected his ability to work an eight hour day. (Doc. 21, Johnson
5  Response facts no. 11 and 25.)

6  Johnson argues that he had shoulder surgery in 2001 which resulted in 15% restriction. Johnson,
7  however, has not come forward with competent evidence that the restriction continued to 2007. Further,
8  he has not explained why he testified he did not have work restrictions. In addition, he does not argue
9  how the 15% restriction, even if it continued, qualifies as a "disability" under the Rehabilitation Act.[1]
10 Therefore, Johnson has not come forward with evidence to meet an element of his *prima facie* case that
11 he had a qualifying disability. Accordingly, the motion as to the claim under the Rehabilitation Act,
12 even if this claim were alleged, will be granted.

### D. Retaliation under Title VII

14 Race discrimination is not an issue in this litigation. Plaintiff states: "Johnson and Massie [sic]
15 is both Afro-American. Therefore racial-discrimination is not an issue." Johnson claims he was
16 retaliated against for engaging in protected activity of contacting EEO.

17 Retaliation claims brought pursuant to Title VII are governed by a the *McDonnell Douglas*[2]
18 burden-shifting framework. *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007); *Miller v. Fairchild*
19 *Industries, Inc.*, 797 F.2d 727, 730-731 (9th Cir. 1986) (order and allocation of proof for retaliation
20 claims follow familiar scheme announced in *McDonnell Douglas)*. "At the first step of *McDonnell*
21 *Douglas*, the plaintiff must establish a *prima facie* case of discrimination or retaliation." *Metoyer*, 504
22 F.3d at 931, n.6. If plaintiff establishes a *prima facie* case, the burden shifts to the employer "to
23 articulate some legitimate, nondiscriminatory reason" for adverse employment action. *McDonnell*
24 *Douglas Corp.,* 411 U.S. at 802. If the employer carries its burden, plaintiff must have an opportunity

---

[1] Indeed, any restriction or disability would be inconsistent with Johnson's contention that he was know as "Rocket Fire," because of "plaintiff's ability to case mail twice as fast as the average carrier." (Doc. 21, Johnson Response Facts no. 15.)

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

8

to prove by a preponderance of evidence that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804.

Here, USPS challenges whether the Johnson establishes a *prima facie* case of retaliation. To make out a retaliation *prima facie* case, a plaintiff must demonstrate that:

1. He/she engaged in protected activity;
2. He/she suffered an adverse employment action; and
3. There was a causal link between his/her activity and the employment decision.

*Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-1066 (9th Cir. 2003).

**1. Suffered an Adverse Employment Action - Element of *Prima Facie* Case**

USPS argues that plaintiff cannot meet his burden of proof on his *prima facie* case. USPS argues plaintiff cannot show he suffered an adverse employment action. Johnson's supervisor issued a letter of warning to him dated August 9, 2007, for his failure to follow instructions and working unauthorized overtime on July 30, 2007. This letter of warning was expunged six months later. Defendant contends the letter of warning was not an adverse employment action because it did not materially affect the terms and conditions of his employment. Defendant cites to cases which have held that Postal Service letters of warning do not constitute an "adverse action" for purposes of Title VII. (Doc. 16-1, Moving Papers p. 10.) Defendant argues that Johnson's complaint that his supervisor instructed him to deliver the mail without incurring overtime on September 6 and September 13, 2007 is considered a "trivial harm" and not an adverse action. Further, the denial of the special route count was not final or adverse.

Not every employment action "amounts to an adverse employment action." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). In *Brooks v. City of San Mateo*, an employee alleged that a poor employment evaluation constituted a discrete retaliatory act. The employee formally objected to the evaluation, but abandoned her job while the challenge was pending. *See id.* at 922. The Ninth Circuit held that the evaluation "was not an adverse employment action because it was subject to modification by the city," and hence, "not sufficiently final to constitute an adverse employment action." *Id.* at 929-30.

**(A) Letters of Warning**

A USPS letter of warning does not constitute an adverse employment action for purposes of Title VII in the discrimination context. See, e.g., *Ezell v. Potter*, 400 F.3d 1041, 1049 (7th Cir. 2005) (in

9

discrimination context, "letter of warning is generally considered insufficient to qualify as an adverse employment action"); *Watson v. Potter*, --- F.Supp.2d ----, 2009 WL 424467, *6 (N.D.Ill. Feb.19, 2009), *aff'd*, 2009 WL 3634334 (7th Cir. 2009); *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (holding that an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity).

Johnson does not dispute that his letter of warning dated August 9, 2007, was expunged from his record. (Doc.21, Plaintiff's response Facts no. 32.) Johnson does not argue how this Letter of Warning, which was expunged, continues to be an adverse employment action. (See *id.*)

**(B) <u>Refusal to Permit Overtime</u>**

Johnson complains that he was required to deliver the mail without incurring overtime on September 6 and 13, 2007. (Doc.1, Complaint para. 10-12.) Plaintiff argues that his route was out of adjustment causing overtime that was not in his control. (Doc. 21, Plaintiff Response Fact no. 16.) He does not dispute that Woodward's Station Stand-Up on July 10 and 11, 2007 stated that Carriers were instructed to deliver their mail without overtime. (Doc. 21, Plaintiff Response Fact no. 15-18.)

As the Ninth Circuit has repeatedly held, "not every employment decision amounts to an adverse employment action." *Brooks*, 229 F.3d at 928. "[W]e have held that only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." *Id.*

Plaintiff does not appear to dispute this fact. He does not argue that he was entitled to work overtime or that precluding overtime was somehow an adverse employment action. Plaintiff states that if he could not deliver the mail in 8 hours, he would have brought the mail back. ((Doc. 21, Plaintiff Response Fact no. 19.)

**(C) <u>Denial of Special Route</u>**

Johnson complains that he was denied a "Special Route Count."

Johnson does not dispute that he could have filed a grievance with his Union to contest the denial of his Request for Special Route Count, but did not file the grievance. (Doc. 21, Plaintiff Response Fact no. 37.) In fact, Johnson spoke with the station supervisor, Kevin Woodward, who explained that the entire station would have a route check and be adjusted. (Doc. 21, Plaintiff Response Fact no. 38.)

Johnson acknowledged that his route was later counted and adjusted to reflect an 8-hour work day. (Doc. 21, Plaintiff Response Fact no. 38.)

Plaintiff does not explain how the denial of the special route was an adverse employment action. Given that he had an opportunity to grieve the denial, and did not, and that the route ultimately was adjusted, the Court does not find this to be an adverse employment action.

### (D)  Sent home on Administrative leave

Johnson also complains that on September 13, 2007, he was sent home early after he confronted his supervisor in the presence of other employees.

This is not an adverse action. Johnson was paid while on administrative leave and there is no evidence of corrective action. (Doc. 16-2, Massie Decl. Par. 15.) Johnson does not dispute that Massie and Johnson had an argument in front of other employees about the route count, and that he was sent home for insubordination. (Doc. 21, Plaintiff Response Fact no. 48-49.) He does not dispute that he was paid or that the matter was dropped. In fact, Johnson believes that he was sent home because Massie "does not like him." (Doc. 21, Plaintiff Response Fact no. 51.)

### 2.  Causal Connection - Element of the *Prima Facie* case

"To establish causation, the plaintiff must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the adverse employment decision and that but for such activity the decision would not have been made." *Kraus v. Presidio Trust Facilities Division/Residential Management Branch*, 704 F.Supp.2d 859 (N.D. Cal. 2010) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)). "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [plaintiff] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988) (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)), *cert. denied,* 488 U.S. 1006 (1989).

Even assuming that Johnson could show an adverse employment action, he has not raised an issue of fact as to causation. He has not raised an issue of fact that any adverse employment action was caused by his protected EEO activity.

It is undisputed that Johnson had EEO activity in 1995 and also made an initial, informal contact

with the EEOC in February 2004. There is a significant lapse of time between Johnson's EEO activity and the alleged retaliation in 2007. Here, there is a lapse of more than nine years from the resolution of the 1995 EEOC action. There is a lapse of over three years between the informal contact with the EEOC (February 4, 2004) by Johnson and the alleged discriminatory conduct in the workplace (July - September 2007). The timing of adverse employment action can provide strong evidence of whether retaliation occurred. *Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1069 (9th Cir. 2003).

In Johnson's 2004 EEO contact, he identified Massie as the discriminating official. The 2004 contact did not result in a formal complaint. Johnson does not submit direct evidence of a causal link between either the 1995 and 2004 EEO contacts and any disciplinary actions in July and September, 2007. Further, the circumstantial evidence does not raise an inference that any adverse action was caused by his EEO contact. Massie argues that the 2004 EEO contact naming Massie, shows she "was aware of plaintiff's filing against her." (Doc. 21, Johnson Response Fact no. 5.) But Massie being aware of a three-year old EEO claim does not raise an inference that letters of warning were in retaliation. Massie's two letters of warning in July and August were reduced and she did not discipline Johnson for failing to deliver the mail on September 7, 2007 or for insubordination on September 13, 2007. The distant temporal connection between the 1995 and the 2004 EEO contacts and any disciplinary actions shows lack of causal connection. Accordingly, plaintiff has not raised an issue of fact that the disciplinary actions in July - September 2007 were caused by his EEO activity in 1995 and 2004.

**E.    Hostile Work Environment**

Johnson claims that Massie created a hostile work environment.

To prevail on his Title VII hostile work environment claim, Johnson must show that his "workplace was permeated with discriminatory intimidation...that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 921 (2000); *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). To establish a *prima facie* hostile work environment claim, a plaintiff must demonstrate that she was subjected to "unwelcome" verbal or physical conduct of a "harassing nature" because of a protected characteristic, like gender, race, or religion, and that the conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." 42

U.S.C. § 2000e-2(a)(1); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000). "The working environment must be both subjectively and objectively perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). The Court considers the totality of the circumstances to determine whether a plaintiff makes out a colorable claim of hostile work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To determine whether a work environment is "sufficiently hostile," the Court looks "at all of the circumstances" including: "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris*, 510 U.S. at 23)

Here, there is no evidence that the alleged harassment was based upon any protected criteria. The conduct by Massie is not alleged or shown to be racially hostile, sexual hostile, gender hostile, disability hostile, or hostile to another protected classification. Johnson was not disabled or restricted in his job function. Johnson's Duty Status Reports show that he had the opportunity to restrict his workload, but he did not require restrictions. Johnson admits he was not restricted in his work. (Doc. 21, Plaintiff's Response Facts no 25.) There is no evidence that race or gender hostility was created by Massie's conduct.

Rather, Johnson complains of unfair treatment from disciplinary actions. He complains about the failure to approve overtime, not granting the route change, and requiring him to deliver all mail. Johnson recounts a history of disciplinary actions and personal interactions solely with Massie and defines their interaction as "hostile." The actions taken by Massie are nothing more than routine managerial acts, however much Johnson disagreed with them. The incidents which occurred between July 30 and September 14, 2007, arise directly out of enforcement of the USPS policies discussed at the Station Stand-Up to eliminate overtime and other USPS policies. None of the USPS responses were final employment actions. Hostility under Title VII does not exist as a general rule of civility. Title VII is simply not a "general civility code." *Faragher*, 524 U.S. at 788 ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'") Johnson has not showed that he was subjected to verbal or physical harassment because of protected characteristics or activities, nor alleged that the conduct was sufficiently severe or pervasive to alter the

conditions of his employment.

Even assuming Johnson established a *prima facie* case, the record shows that the USPS offered a legitimate, nondiscriminatory and nonretaliatory reasons for disciplining and ultimately issuing letters of warning and sending him home for insubordination. Johnson has not raised a genuine issue of material fact that USPS' reasons were mere pretext.

## **CONCLUSION AND ORDER**

For all the foregoing reasons, the Court orders as follows:

1. The motion for summary judgment as to the claims for due process and equal protection is GRANTED.
2. The motion for summary judgment as to the Americans with Disabilities Act and as to the Rehabilitation Act is GRANTED.
3. The motion for summary judgment as to Retaliation under Title VII is GRANTED.
4. The motion for summary judgment as to Hostile Work Environment under Title VII is GRANTED.

The Clerk of the Court is directed to enter judgment in favor of the defendant, JOHN E. POTTER, Postmaster General, and against the plaintiff, QUINCY L. JOHNSON. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

**Dated:   June 8, 2011**                                      /s/ Lawrence J. O'Neill
                                                                          UNITED STATES DISTRICT JUDGE